NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 40

No. 2015-020

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orange Unit, |
| | Criminal Division |
| | |
| James Anderson | January Term, 2016 |

Michael C. Pratt, J., Specially Assigned

William H. Sorrell, Attorney General, and Bridget C. Asay, Solicitor General, Montpelier, for
 Plaintiff-Appellee.

Allison N. Fulcher of Martin & Associates, Barre, for Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **EATON, J.** Defendant appeals from the trial court's decision finding he violated two conditions of probation for his failure to complete sex offender programming to the satisfaction of his probation officer during the unsuspended portion of his sentence. We affirm.

¶ 2. On September 18, 2003, defendant was convicted of sexual assault of a minor in violation of 13 V.S.A. § 3252(a). He received a sentence of nineteen to twenty years, all suspended except eleven years. The sentencing court indicated that the split sentence was intended to deliver a "severe sanction" while giving defendant an option to make good on what he claimed was remorse and what he claimed to admit doing. For this reason, the trial court

explained at sentencing that the split sentence was contingent on defendant completing sex offender treatment programming during the to-serve portion of his sentence.

¶ 3.    In 2014, while serving the unsuspended portion of his sentence, defendant entered the Vermont Treatment Program for Sexual Abusers, a six-month sex offender treatment program.  On June 10, 2014, defendant was suspended from the treatment program for ninety days for his failure to admit responsibility for the sexual assault underlying his conviction.  At that time, defendant was advised that readmission to the treatment program required that he answer and submit to his caseworker five standard questions no later than one week prior to the end of the ninety-day suspension period.

¶ 4.    On July 11, 2014, defendant's probation officer filed a complaint, alleging that defendant had violated the terms of his probation for failing to participate fully in and complete the Vermont Treatment Program for Sexual Offenders during the unsuspended portion of his sentence, which was set to end on September 8, 2014.  The trial court found that as a result of a clerical mistake, error, or omission, there was no indication whether defendant had received a "certificate explicitly setting forth the conditions upon which he or she is being released," as required under 28 V.S.A. § 252(c).  On July 23, 2014, the trial court dismissed the complaint, finding no probable cause for a violation of probation because the affidavit in support of the complaint did not include an allegation that defendant had received written notice of the conditions of his release, as required under 28 V.S.A. § 252(c).  See State v. Hemingway, 2014 VT 48, ¶ 23, 196 Vt. 441, 97 A.3d 465 (holding that without explicit written notice required by law, setting forth conditions on which defendant is being released on probation, defendant's revocation of probation based on probation violation is rendered invalid).

¶ 5.    Consistent with V.R.Cr.P. 36, the trial court subsequently directed the trial court clerk to prepare a probation warrant placing defendant on probation with the standard conditions

2

of probation, specifically including special conditions K and 31. Condition K requires that if ordered by the court or his probation officer, defendant must attend a counseling or training program, and must participate in that program to the satisfaction of his probation officer. Condition 31 requires defendant to "attend and complete the Vermont sex offender programming to the satisfaction of his probation officer during the unsuspended portion of his sentence."

¶ 6. On July 29, 2014, defendant received and signed the probation warrant, which included conditions K and 31.

¶ 7. At no time after defendant received the probation warrant did his probation officer reiterate the need to submit his answers to the questionnaire before re-applying to the treatment program.

¶ 8. On August 27, 2014, defendant's probation officer filed a complaint, alleging that defendant had violated conditions K and 31 by failing to complete the sex offender treatment program to the satisfaction of his probation officer. Defendant filed a motion to dismiss the complaint, asserting that the conditions were not enforceable until July 29, 2014, when he received the probation warrant, at which point it was impossible for him to comply with conditions K and 31 by completing the treatment program before the end of the unsuspended portion of his sentence on September 8, 2014. The trial court found that it was defendant's burden to prove condition 31 was impossible to perform, and cited to State v. Austin, 165 Vt. 389, 398, 685 A.2d 1076, 1082 (1996). The trial court then concluded that defendant failed to meet this burden. The trial court thus scheduled the matter for a hearing on the merits of the probation violation complaint.

¶ 9. At the merits hearing on December 10, 2014, the trial court found defendant had violated the terms of his probation. That holding was based on testimony from defendant's probation officer, stating defendant had notice that answering the five standard questions was a

3

pre-requisite for re-application to the treatment program, and that defendant had failed to do so as of the date of the hearing. When asked if defendant had answered the questions satisfactorily, he may have been eligible for treatment in the community, the probation officer testified "yes, depending on [defendant's] answers."

¶ 10. Considering defendant's conduct after July 29, 2014, the trial court found defendant in violation of conditions K and 31. The trial court reasoned that under the terms of the conditions, the probation officer had the responsibility of deciding "what met his satisfaction, how many acts had been performed toward the goal of attendance and completion, and what would suffice as satisfaction." Although the trial court acknowledged that defendant could not have re-entered the treatment program before his release date, it found that he could have taken steps towards re-entering the program by submitting his answers to the questionnaire required for re-admission to the treatment program. Furthermore, the trial court found defendant had failed to prove that it was impossible to comply with the conditions because it was within his probation officer's discretion to determine whether defendant attended and completed the treatment program to his satisfaction. Because defendant "did not do what he could have done" to comply with conditions K and 31 after July 29, 2014, the trial court rejected his defense of impossibility. The trial court sentenced defendant to serve an additional six months on the original unsuspended portion of his sentence. Defendant appealed.

¶ 11. Whether a probation violation occurred is a mixed question of law and fact. State v. Miles, 2011 VT 6, ¶ 6, 189 Vt. 564, 15 A.3d 596 (mem.). First, the trial court must "make a factual determination of the probationer's actions," followed by "an implicit legal conclusion that the probationer's actions violated his probationary terms." State v. Woolbert, 2007 VT 26, ¶ 8, 181 Vt. 619, 926 A.2d 626 (mem.). In a probation revocation hearing, the State bears the burden of proving a probation violation by a preponderance of the evidence. Austin, 165 Vt. at

4

398, 685 A.2d at 1082. The State meets this burden by showing "that there has been a violation of the express conditions of probation." Id. (quotations and citations omitted). If the State meets this initial burden, the burden shifts to the probationer to prove the violation was "not willful but rather resulted from factors beyond his control and through no fault of his own." Id. (quotation and citation omitted).

¶ 12.    Neither party disputes the trial court's finding that defendant did not complete the sex offender treatment program, either at the time the probation violation was filed or at the time of the probation violation merits hearing. On appeal, defendant's sole challenge is to the trial court's finding that defendant failed to meet his burden of proving that the violation was "not willful but rather resulted from factors beyond his control and through no fault of his own." Id. Specifically, defendant argues that it was impossible for him to attend and complete the treatment program to the satisfaction of his probation officer before the end of the to-serve portion of his split sentence, and that the evidence does not support the trial court's finding that defendant would have been in compliance with conditions K and 31 had he answered the questions necessary for re-application to the treatment program at any time after July 29, 2014. The State contends that the trial court's finding of a violation of conditions K and 31 is supported by the record because defendant failed to demonstrate that his failure to satisfy the condition resulted from factors beyond his control and through no fault of his own. The State also challenges the trial court's finding that defendant could not be found in violation of conditions K and 31 before receipt of written notice of that condition, because the notice requirement in 28 V.S.A. § 252(c) applies only where the defendant has been released on probation, and not where the condition is a prerequisite to release on probation. We do not reach the State's argument, which was raised for the first time on appeal.

¶ 13.   "As we have long recognized, the words 'willful' and 'intentional' are generally synonyms in the criminal law."  State v. Coyle, 2005 VT 58, ¶ 15, 178 Vt. 580, 878 A.2d 1062 (citing State v. Parenteau, 153 Vt. 123, 125-26, 569 A.2d 477, 479 (1989)); see also DeMillard v. State, 2013 WY 99, ¶ 14, 308 P.3d 825 ("Willfully" means "intentionally, knowingly, purposely, voluntarily, consciously, deliberately, and without justifiable excuse, as distinguished from carelessly, inadvertently, accidentally, negligently, heedlessly or thoughtlessly." (citing Edrington v. State, 2008 WY 70, ¶ 9, 185 P.3d 1264)).  The question is whether defendant's violation of the conditions of his probation was due to circumstances beyond his control, "by accident, mistake, or inadvertence," or was the result of intentional conduct.  See State v. Penn, 2003 VT 110, ¶ 9, 176 Vt. 565, 845 A.2d 313 (mem.) (approving jury instruction defining willfully as "purposefully and intentionally, and not by accident, mistake or inadvertence." (quotations omitted)).  Whether a defendant's probation violation was willful is a question of fact, and we will not disturb a trial court's determination that the defendant acted willfully unless that determination was clearly erroneous.  Miles, 2011 VT 6, ¶ 6.

¶ 14.   In determining whether the trial court abused its discretion revoking defendant's probation, we note that defendant did not argue before the trial court that his conduct in violation of his probation was not willful.  While defendant argued that it was impossible to complete the sex offender treatment program in the period between July 29, 2014 and September 8, 2014, he made no claim that he could not "attend and complete the Vermont sex offender programming to the satisfaction of his probation officer during the unsuspended portion of his sentence."  Further, he did not indicate whether he spoke with his probation officer or sought alternate means of satisfying the condition.  Rather, defendant chose to challenge the revocation of his probation on the grounds that because there was insufficient time to complete the treatment program between

6

July 29 and September 8, it was impossible for him to comply with conditions K and 31, rendering his violation the result of circumstances beyond his control.

¶ 15. We agree with the State that the probation conditions at issue in this appeal gave defendant's probation officer discretion to determine whether defendant's attendance and completion of the treatment program was "to the probation officer's satisfaction." Defendant mistakenly focuses on the language requiring that he "attend and complete the Vermont sex offender programming," at the expense of the remainder of the condition, which allows him to do so "to the satisfaction of his probation officer." See Agway, Inc. v. Marotti, 149 Vt. 191, 194, 540 A.2d 1044, 1046 (1988) (stating that probation orders, viewed as contracts, should be construed to give effect to all parts and to intention of contracting parties). The condition can be interpreted to require only that defendant attend and complete the treatment program to the satisfaction of his probation officer. The language of the condition requires more than mere attendance. It also requires a degree of completion that the probation officer finds satisfactory, which may have been possible to achieve during the unsuspended portion of his sentence.[1] We therefore conclude the condition provided the probation officer with discretion to determine whether defendant's attendance and completion of the treatment program satisfied the condition.

¶ 16. Regardless, considering arguendo the conditions under defendant's iteration, defendant has failed to satisfy his burden by showing the violation was "not willful but rather resulted from factors beyond his control and through no fault of his own." Austin, 165 Vt. at 398, 685 A.2d at 1082 (emphasis added). Defendant offered no testimony that he attempted to work with his probation officer to formulate a plan enabling him to satisfy the conditions, or that he began the steps necessary to re-enter the program. It is uncontroverted that defendant was aware of the prerequisites required for re-entry into the treatment program, and of his probation

---

[1] For example, defendant might not have fully completed the program but could have done so to a degree which the probation officer found satisfactory under the circumstances.

7

officer's discretion in determining whether he satisfied the conditions. Defendant was aware that he could not rejoin the program until two things had occurred: (1) the passage of the ninety-day suspension period, and (2) his completion of the necessary re-entry questions. Defendant has neither demonstrated that compliance with this condition was beyond his control nor suggested that it was through no fault of his own. Had he answered the five questions, leaving him ineligible for the program solely because the suspension period had not elapsed, this might be a different case. Indeed, his probation officer's testimony confirmed the possibility of an opportunity to receive treatment in the community.[2] Defendant remained ineligible, however, not only because insufficient time had elapsed since his suspension, but also because he had chosen not to answer the five questions required for re-entry before the conclusion of the to-serve portion of his sentence. Based on these facts, we conclude that the trial court did not clearly err in concluding that defendant failed to meet his burden of showing that compliance with conditions K and 31 was not willful.

¶ 17. Finally, that the conduct that resulted in defendant's suspension from the treatment program, as well as the notice that the answers to five questions were required before he could re-apply to the program, both occurred prior to the date of the written probation order, does not alter our analysis. Probation is intended to provide a defendant the opportunity "to voluntarily condition his behavior according to the requirements of the law and to test his ability to do so." State v. Hale, 137 Vt. 162, 164, 400 A.2d 996, 998 (1979) (citing 28 V.S.A. § 252; ABA Standards, Probation § 1.2 (1970)). "As such, it is prospective, based on a promise of future conduct." Id. For this reason, "[r]etraction of probation . . . should be reserved for

_____

[2] When asked whether it would have been possible to plan for defendant to receive treatment in the community following acceptable answers to the five questions, defendant's probation officer testified, "yes, depending on his answers. Definitely." Pressed as to whether defendant could have received treatment if he had submitted his answers and they were deemed acceptable, defendant's probation officer testified in the affirmative that he could have worked on a case plan to get defendant treated in the community.

8

behavior that breaches its conditions after the probationary agreement is entered into," and "must be based on some act or failure to act on the part of a probationer that occurs after he [or she] agrees to the conditions of his [or her] particular probation." Id. It is undisputed at trial that defendant was aware of both the suspension and the need to complete the questionnaire and that he made no effort to submit his answers. Although defendant's knowledge of the steps necessary for re-application arose before July 29, 2014, his failures to begin the process of re-application and to seek out alternate avenues of compliance are acts or failures that continued after he received the conditions of probation on July 29. Section 252(c) requires that a defendant be provided with a certificate explicitly setting forth the conditions governing the defendant's probation. Once defendant received notice of the conditions through receipt of the required probation certificate, he was obligated to comply with them. For this reason, we do not agree with defendant's characterization of his noncompliance with condition 31 as pre-dating the date he received the probation warrant.[3]

¶ 18. The trial court found that defendant did not meet his burden of persuasion. It did not err in rejecting defendant's argument that it was impossible to comply with condition 31, finding that he did not prove that he could have completed the program to the satisfaction of his probation officer. See Austin, 165 Vt. at 398, 685 A.2d at 1082 (on review, trial court's factual findings will stand if "fairly and reasonably supported by any credible evidence"; court's legal

---

[3] It has been suggested, based upon Hemingway, 2014 VT 48, ¶ 23, that a defendant cannot be found in violation of probation unless he/she has signed a probation order prior to a violation being sought. However, Hemingway actually requires that a signed probation order, as opposed to a plea agreement, be used to establish the terms of probation and to provide defendant with notice of them. Id. ¶ 22. It would necessarily be the trial court, not the probationer, who would sign the probation order. Further, 28 V.S.A. § 252(c) requires only that the probationer receive a probation certificate. Nothing in the statute requires a defendant to sign the probation certificate. To hold that probation does not begin until a defendant signs a probation certificate would give a defendant veto power over when the terms of probation commenced. A signature acknowledging receipt of the probation certificate is one, but not the only, way to establish that a probationer has received the required probation certificate.

conclusions will stand if reasonably supported by findings). For this reason, the trial court did not err in concluding that defendant failed to prove that his violation of the condition was the result of factors beyond his control and that his failure to do so was through no fault of his own.

Affirmed.

FOR THE COURT:

_____

Associate Justice